Good morning. May it please the Court, my name is Patrick Gregory. I'm with the firm of Shook, Hardy & Bacon, and I represent the Petitioner, Carlos Sanchez-Mendoza, in this matter. Kind of start off, what we, you know, a lot of what happened to Petitioner is really not at dispute. As we point out in our reply, it's a matter of applying what happened to him to the applicable legal standards. But one thing I do want to make clear about what happened to him is, you know, this is Petitioner's unrebutted testimony, and it probably goes to all claims. It's referenced to the incident that happened after he returned to El Salvador in 2013, and he said, quote, referring to the MS-13 gang, they, quote, knew that I had just returned from the U.S. In spite of everything, I was going to be killed. They were going to cut my head, my hands, my legs, end of quote. And he also referred to being put in a plastic bag out in front of his father's house. So what would be most useful to me is if you can tell us, in light of our case law and the BIA case law, why this is he's a member of a protected group, a particular social group, which is what I gather the claim is. Yeah. On the asylum claim, that's the... Well, the asylum claim and the withholding claim, right? What's that? And the withholding claim. Correct. Correct. Well, on that, I think he's... First of all, you have to go back to, I think, a very important case on this particular point is the PIRBAC case, 750 F. 3rd, 1077, where this Court reviewed its Henriquez-Rivas decision and then reviewed a couple subsequent BIA decisions that were issued and... But in Henriquez, the Petitioner testified against, openly against the gang, right? I mean, key factual distinction in that case. Correct. I think the key cases here would be the Reyes v. Lynch and Arteaga v. Mukasey, both involving former gang members. How can you possibly distinguish your case from those two cases? Well, I think the important point of the case I was referring to is it said the rule that has emerged is the following. To determine whether a group is a particular social group for the purposes of an asylum claim, the agency must make a case-by-case determination as to whether the group is recognized by the particular society in question. Well, but this is the problem. The case-by-case doesn't, I assume, doesn't mean each case-by-each case in the sense that a defined group, once it's defined, the case, if there's a case saying it isn't a social group, then it isn't a social group, no? Well, the very next sentence, Your Honor, says, to be consistent with its own precedent, the BIA may not reject a group solely because it had previously found a similar group in a different society to lack social distinction. Well, that's true. But this is the same group in the same society. That's the problem. So what, in terms of Reyes v. Lynch and Arteaga v. Mukasey, what's the difference? That's what I need to know. And Aguilar-Rodriguez as well, which is a nonpublished case. I think part of the reason the Court is referring to a case-by-case record or case-by-case instance is the records differ in each case. And if you look in this case, I mean, we provided about 70 pages of, you know, country conditions, and we cited some of them are brief, but one I'd like to focus on here is it's in the record at 343, and it's in a report, Gangs in Central America. And the portion of the report under the heading Societal Stigmas says, Societal stigmas against gang and gang deportees in the United States have made the process of leaving a gang extremely difficult. I'm going to skip a couple sentences. And they say, Ex-gang members report that employers are often unwilling to hire them. Tattooed former gang members, especially returning deportees from the United States, who are often native English speakers, have had the most difficulty finding gainful employment. Some gang members have gone through complete tattoo removal, a long and expensive process, which many feel is necessary to better blend into society. But is the stigma leading to difficulties in obtaining employment, is that the stigma that matters here? Well, no, I think the stigma that matters is being a member of a former gang. I mean, I think when they were talking about the problems tattooed former gang members are having, you know, they're talking about the problems having a tattoo can cause. Actually, what I think they were doing is they were trying to overcome the notion that they weren't visible by showing that or recognizable by showing that they were recognizable because they had tattoos. In other words, it was sort of a second-level argument in reaction to the fact that earlier cases had said, I mean, maybe not very convincingly, but they had said that there was no, not sufficient cohesion or visibility in this group. So now they're saying, well, we have a tattoo, so we are visible. In other words, I don't think it was because the tattoo is the group. It was because the tattoo proves that we're in the group. In addition to that, you haven't gotten around to show how the government is involved in this process. Well, there's, you know. The record indicates that, and as a matter of fact, they are making great progress with gang in the country. The government of the United States is assisting, sending down assistance to it. They're not only going after gang members but corrupt officials. Well, there's the question of how much that's worked. I mean, I think when you read the entire 70 pages of country conditions. Where does it show? Do you have any showing that the government has been involved in this? There's nothing in the record here, and the immigration judge took a good deal of time to point out what that evidence is in the record. It just seems to me to be there's no indication we shouldn't believe it. Well, my reading of, and I think it's the only reading you can come to. If you read all those pages, yes, you see some references to actions the government has taken, but they haven't significantly worked. You say that. You say that. But where in the record does it prove it, that they haven't worked? As a matter of fact, the record indicates that they are working slowly but surely. I beg to differ. I think the record refers to the fact that efforts are being made, but there's still statistics throughout the. . . But are you showing any showing in here that the government is behind any of the trouble that may be caused to it? I don't think they have to be behind it. I think part of the standard is they've been unable to stop this, and it's been a terrible problem. The question is, if not behind it, are they acquiescing in it? And so I think the question is, in the CRS report, one of the eight exhibits that the immigration judge did accept and said the judge considered, what in the CRS report compels a different conclusion than what the immigration judge reached, accepting the standard is either behind or acquiescing in? I think there's – I think some of the cases we cited said more than acquiesce. They've been unable to. Yeah, the standard is in acquiescence, and unable and unwilling for asylum, right? Acquiescence for CAT. And I'm talking about CAT, just to be clear, if I wasn't clear. Oh, okay. Well, I'm getting close to out of time. I think that is the standard for CAT. And but one thing I wanted to mention before I run out of time is I think the fact that the BIA only addressed the CAT claim in one sentence is problematic and mandates at least a remake. Well, we've held before that the BIA doesn't have to reiterate everything the IJ said. The IJs had two pages of analysis. The BIA just summarized that. We could look at what happened in the entire record, including the BIA decision, which was the one that was being reviewed by the board. There's a complete analysis there, wouldn't you suggest? I mean, I suggest it is. Isn't that true, what the IJ did? I don't know what the BIA did. The BIA said in one sentence. Oh, excuse me. You don't know what the IJ said? It's in the record. I know what the IJ – yes, I do. And they're reviewing that record. And so they – and we said that we can look to what the IJ has said as well as the board in making our determination. So here's my question, what's bothering me the most. In Reyes-Lopez, this Court said, Accordingly, we reject the challenge to the BIA's determination that his proposed social group of former members of the Mara 18 gang in El Salvador, who have renounced their membership, is not cognizable. Is that the group you're arguing for, former members of the Mara 18 group in El Salvador who have renounced their membership? That is the group. So, I mean, absent an unbanked petition, aren't we just bound? Well, I'd go back to that we have a different record in this case. And on the CAT claim, can you – because I've now clarified that's what I was asking about. What specifically, what pages in the record of the CRS report would you point us to, to support the argument that full consideration of the CRS report would have compelled a different conclusion on the CAT claim? The sites are – we cite matters in our reply brief. I don't have them right in front of me right now. I would refer – I do think the – and it's included within the overall site, but the site to the societal stigma section that I just read. And, you know, I do think this case falls within the Pura Bach statement that said, on page 1085-86, the BIA gave no explanation for its decision, nor did it mention any evidence that it considered. And I recognize that the IJ had an opinion, but this is a review of the BIA, and I don't know what they considered, because they did basically the same thing that happened in the Pura Bach case. I have one other question about the social group. I gather that the case I just read from was sufficiently after the recent cases revising the definition of a particular social group, that there's no distinction for that reason. Is that right? I think that's correct, Your Honor. All right. You know, I understand that this determination that these are not cognizable social groups might – are probably largely driven by the fact that gangs shouldn't be social groups because they're gangs, but that nonetheless seems to be where we are as a problem. Anyway, thank you very much, and thank you for undertaking this case, Pro Boto, which I gather you did. You're welcome. Thank you. Good morning, Your Honors. May it please the Court, Charisse Pratt for the respondent, the Attorney General. Your Honors are correct that this Court is bound by the holding in Arteaga, which found that former members of a criminal gang are not members of a particular social group. Well, that was a little – that case was probably before the latest iterations of what a particular social group is, but Reyes-Lopez was after. Is that right? Correct. But in this case, also deference is owed to the matter of WGR, the Board's decision, where they say that former members of the Mara 18 gang in El Salvador who renounced their gang membership lack sufficient particularity and social distinction to constitute a particular social group. Yeah. I mean, I must say that if, for example, we were talking about former communists in the former Soviet Union, the result might be different, but there's something about that. I'm not persuaded, in other words, by the analysis, but I'm persuaded that it exists. So. Does the case law leave open any possibility of refining the definition of the group to slip through? So, for example, if former members of the 18th Street gang rival to MS? The problem is that it's – it encompasses such a big group. It could be people who were jumped in, like the Petitioner. It could be hardened criminals with extensive violent history. But, you see, the problem is that the analysis seems, as I sort of indicated before, seems to be taking in impermissible factors. That is, whatever – it may be a big group, but it may include some hardened criminals. But that's not the question as to whether it's a particular social group. Now, the hardened criminals presumably aren't – if the GHS is doing its job, aren't going to get in because they're hardened criminals. They're going to have crimes, and they're not – both in their original country and here, and therefore they're not going to get any relief. But here you have a guy whose only crime in this country was to do UI, right? And there doesn't seem to be any evidence that he had any serious criminal history anywhere. Yes, but unfortunately, none of the harms that he suffered in El Salvador are related to a protected ground. There's no nexus. Oh, right, but that's the question, not the answer. The question is, is it a protected ground? Let's go back a step. Is being in a gang a protected social – a particular social group? Excuse me? Is being in a gang a particular social group? No. It's not – being in a gang is not the type of particular social group that asylum laws – Because? Because that's a criminal activity. But there's no criteria like that. I mean, I understand that that feels right. But in fact, there's nothing in the statute that says – but not if it's a criminal activity. Right, just case law. So it's simply an overlay because it's – you know, you sort of say, well, they couldn't have meant this. But is it – in some ways, it's a classic kind of particular social group in terms of what the statute was getting at. That is, people are associated in known groups and are treated however they're treated by their fellow society members because of that. It's like being in the, I don't know, Masons or something. But it has a criminal purpose. That's true, but that's not in the statute, except if you have a criminal purpose. I mean, I understand that it feels sensible. It certainly feels sensible, but it's not in the statute. All right, go ahead. Okay. So his harms were not on account of a protected ground, and he has not shown that the government is unable or unwilling to control his – the people who harmed him. Though the Board did not directly address the CAT issue, there's nothing to suggest that it did not consider it. It addressed it in one sentence. In one sentence. There's nothing to suggest that they did not consider, you know, the IJ's analysis. What's your response to Petitioner's suggestion that the information regarding societal stigma leading to difficulty to obtain employment, that that information and other information in the CRS report would compel a different conclusion? Well, I guess the only – the society cannot really identify former gang members. He said he – there's no way to identify them from others. They seem not to have a whole lot of difficulty identifying them. In other words, you're saying the society can't identify them, but the people who are relevant seem to know exactly who the former gang members are. Well, the people who harm – who he's alleging harms him, which were the rival gang members. But, you know, engaging in criminal activity, if you're going to be in a gang, then that does subject you to, you know, potential harm from other gangs. But that's not something that's protected. The CRS report does talk about persecution in some cases, persecution by citizens in the form of vigilante action. But here, none of the harms he suffered arise to persecution. All right, understood. So substantial evidence supports the agency's denial of asylum, withholding, and protection against – under the Convention Against Torture. The record does not compel the finding that Mr. Sanchez-Mendoza suffered persecution, where he was never harmed on account of a protected ground. If there are no further questions? On the issue of whether or not the board gave sufficient consideration to the CAT claim, its consideration was short, but it was revealing a decision of the board which was extensive. I had understood that in Atavola we had already decided that issue and that we affirmed the board under this situation. Do you have any other cases? Yes. Najma Badi says that the board does not have to write an exegesis on every contention. It's merely required to consider the issues raised, announce a decision in terms sufficient to enable a reviewing court to perceive that it has heard and not merely reacted. It did have a couple of citations there as well, next to the sentence, which I guess were meant to be explanatory. Yes. All right, well, if you have nothing else, that's fine. Okay, thank you. Okay. Anything else, sir? No. Thank you very much. Thanks to both of you for the argument in Sanchez-Mendoza v. Sessions. The next case, Pan v. Sessions, is submitted under the briefs and will go to United States v. King.
judges: Wallace, Berzon, Mueller